IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BMO HARRIS BANK N.A., | § |
| Plaintiff, | § § § |
| v. | § § Case No. 4:18-cv-00449 |
| SPACE CITY LOGISTICS, LLC, INC., a Texas limited liability company, | § § § |
| Defendant. | § § § |

## VERIFIED COMPLAINT

Plaintiff, BMO Harris Bank N.A., by its attorneys, complains of Defendant, Space City Logistics, LLC as follows:

### THE PARTIES

1. Plaintiff, BMO Harris Bank N.A. ("Plaintiff"), is a national banking association with its main office, as set forth in its articles of association, located in Chicago, Illinois.

2. Defendant, Space City Logistics, LLC ("Borrower"), is a limited liability company organized under the laws of the State of Texas with its main office located at P.O. Box 15793, Houston, Texas 77220. Borrower may be served with process by serving its registered agent, United States Corporation Agents, Inc., at 9900 Spectrum Drive, Austin, TX 78717.

### JURISDICTION AND VENUE

3. The parties are of diverse citizenship.

4. The amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

1

6. The parties consented to and submitted themselves to the jurisdiction of the State and Federal Courts located in Texas, pursuant to the various agreements that comprise the subject matter of this lawsuit.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**The Agreements**

8. On or about October 9, 2015, non-party Transportation Truck and Trailer Solutions, LLC ("TTTS") and Borrower entered into Loan and Security Agreement No. 7973469-001 (the "First Loan Agreement"), whereby TTTS agreed to finance Borrower's purchase of the equipment described therein for use in Borrower's business, and Borrower agreed to pay TTTS $156,377.28, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the First Loan Agreement, together with any amendments or modifications thereto, is attached hereto as "Exhibit A."

9. On or about July 11, 2017, Plaintiff and Borrower entered into Loan and Security Agreement No. 7973469-002 (the "Second Loan Agreement"), whereby Plaintiff agreed to finance Borrower's purchase of the equipment described therein for use in Borrower's business, and Borrower agreed to pay Plaintiff $4,455.50, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Second Loan Agreement, together with any amendments or modifications thereto, is attached hereto as "Exhibit B."

10. On or about July 17, 2017, Plaintiff and Borrower entered into Loan and Security Agreement No. 7973469-003 (the "Third Loan Agreement"), whereby Plaintiff agreed to finance Borrower's purchase of the equipment described therein for use in Borrower's business, and Borrower agreed to pay Plaintiff $6,255.20, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Third Loan Agreement, together with any amendments or modifications thereto, is attached hereto as "Exhibit C."

11. On or about August 9, 2017, Plaintiff and Borrower entered into Loan and Security Agreement No. 7973469-004 (the "Fourth Loan Agreement"), whereby Plaintiff agreed to finance Borrower's purchase of the equipment described therein for use in Borrower's business, and Borrower agreed to pay Plaintiff $4,429.25, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Fourth Loan Agreement, together with any amendments or modifications thereto, is attached hereto as "Exhibit D."

12. Hereinafter, First Loan Agreement, Second Loan Agreement, Third Loan Agreement, and Fourth Loan Agreement are referred to collectively as the "Agreements."

13. For consideration of entering into the First Agreement, Borrower granted TTTS a security interest in the equipment described in the First Agreement. For consideration of entering into the Second Agreement, Third Agreement, and Fourth Agreement, Borrower granted Plaintiff a security interest in the equipment described in the Second Agreement, Third Agreement, and Fourth Agreement. The equipment described in the Agreements is referred to collectively as the "Collateral."

14. Effective December 7, 2017, TTTS, either directly or indirectly, transferred and assigned to Plaintiff all of its rights, titles and interests in and to their accounts with Borrower, including without limitation, the First Agreement and TTTS' security interest in the Collateral. As such Plaintiff is TTTS's successor-in-interest with respect to all rights, claims, and interests related to Defendant with respect to this action. A true and correct copy of the Transfer Acknowledgements evidencing the transfer from TTTS to Plaintiff is attached hereto as "Exhibit E."

15. Under the terms and conditions of the Agreements, failure to make a payment when due is considered an event of default.

AUS-6468367-2

**Default by Defendants**

16. Borrower is in default under the Agreements for its failure to pay the amounts due thereunder.

17. More specifically, Borrower failed to make the July 1, 2017 payment due under the First Loan Agreement, the September 1, 2017 payment due under the Second Loan Agreement, the September 1, 2017 payment due under the Third Loan Agreement, and the September 9, 2017 payment due under the Fourth Loan Agreement. In addition, Borrower has failed to make all payments due under each of the Agreements subsequent to these dates.

18. In addition, Borrower is in default under the Agreements due to the filing by Shawn H. Faris, principal of Borrower and guarantor of Borrower's performance under the Agreements, of a petition for relief under chapter 13 of title 11 of the United States Code in the U.S. Bankruptcy Court for the Eastern District of Texas, Case No. 17-90300 (the "Bankruptcy case").

19. The assets of Borrower sought pursuant to this litigation are not property of the estate in the Bankruptcy Case and Plaintiff does not seek any relief against Mr. Faris or his assets in this litigation.

20. Pursuant to the terms of the Agreements, the entire amounts due thereunder have been accelerated. The principal amount due and owing after acceleration totaled not less than $108,920.80 as of the respective dates of default.

21. Under the Agreements, Borrower is obligated to pay interest on all unpaid amounts at the default interest rate of eighteen percent (18%) per annum or the maximum rate not prohibited by applicable law.

22. Under the Agreements, Borrower is obligated to pay late charges and other fees due under the Agreements.

4

23. Under the Agreements, upon default, Borrower is obligated to pay all expenses of retaking, holding, preparing for sale, and selling the Collateral.

24. Under the Agreements, Borrower is obligated to pay the attorneys' fees and costs incurred by Plaintiff in the enforcement of its rights thereunder, including this lawsuit.

25. Calculated as of October 27, 2017, the amount due and owing under the Agreements, not including attorneys' fees and expenses or costs of collection, is an amount not less than $118,332.81 and continues to accrue at a rate of $54.45 *per diem*.

26. Plaintiff notified Defendant of its defaults under the Agreements and made demand upon it to pay the amounts due thereunder.

27. On September 18, 2017, Plaintiff made demand upon Borrower to pay the accelerated amount due under the Agreements to Plaintiff (the "Demand Letters"). True and correct copies of the Demand Letters are attached hereto as "Exhibit F." Plaintiff has also made demand upon Borrower to surrender possession of all of the Collateral to Plaintiff.

28. Despite demand, Borrower and Guarantor have failed and refused to pay the amount due and owing under the Agreements.

29. Under the Agreements, Plaintiff has the right to, with or without demand or notice, enter any premises where the Collateral may be and take possession of and remove them from the premises.

30. Despite demand, Borrower has failed to surrender the following items of Collateral to Plaintiff (collectively, the "Remaining Collateral"):

| Year | Make | Model | Description | Serial Number |
|---|---|---|---|---|
| 2012 | International | Prostar | Tractor | 3HSDJSJR7CN543176 |
| 2012 | International | Prostar | Tractor | 3HSDJSJR9CN543129 |
| 2012 | International | Prostar | Tractor | 3HSDJSJRXCN543172 |
| 2012 | International | Prostar | Tractor | 3HSDJSJR8CN543123 |

5

31. The Agreements expressly provide that Plaintiff and Borrower unconditionally waive their respective rights to a jury trial of any claim or cause of action relating thereto.

32. Under the Agreements, Borrower is obligated to pay the attorneys' fees and costs incurred by Plaintiff in the enforcement of its rights thereunder, including this lawsuit.

33. Under the Agreements, Borrower is obligated to pay interest on all unpaid amounts at the rate of eighteen percent (18%) per annum or the maximum rate not prohibited by applicable law.

34. Plaintiff and its predecessor-in-interest have performed any and all conditions and obligations required of them under the Agreements.

## COUNT I – Injunctive Relief

35. Plaintiff incorporates and realleges all preceding paragraphs in this Count I.

36. Borrower continues to possess and utilize, or is capable of utilizing, the Remaining Collateral for transportation, shipping, and other commercial purposes.

37. On any given day the Remaining Collateral is located, or is capable of being located, in diverse places throughout the United States.

38. The Remaining Collateral depreciates and deteriorates as a result of its continued use by Borrower, with no commensurate value being conferred to Plaintiff in the form of payments due and owing from Borrower.

39. Borrower has or should have in place capabilities to identify, locate, and surrender the Remaining Collateral, which capabilities may now be breaking down.

40. Plaintiff will suffer irreparable injury for which no adequate remedy at law exists unless Borrower and other persons and firms having knowledge of this injunction are (a) enjoined from continuing to use the Remaining Collateral; (b) ordered to advise Plaintiff of the

location of the Remaining Collateral; and (c) ordered to surrender the Remaining Collateral to Plaintiff.

WHEREFORE, Plaintiff prays that:

a. Borrower and other persons and firms having knowledge of the injunction, including without limitation the officers and directors of Borrower having knowledge of the injunction, be temporarily, preliminarily, and permanently enjoined from using the Remaining Collateral as of the date of entry of the injunction order;

b. Borrower be ordered to disclose to Plaintiff the precise location of the Remaining Collateral in order for Plaintiff to reclaim it;

c. Borrower be temporarily, preliminarily, and permanently enjoined from restricting access of Plaintiff to the Remaining Collateral;

d. Plaintiff be awarded a judgment against Borrower for any damages sustained by Plaintiff;

e. Plaintiff be awarded its costs, attorneys' fees, and interest on all unpaid amounts due and owing; and

f. Plaintiff be granted such other and further relief as shall be just and equitable.

## COUNT II – Special Performance

41. Plaintiff incorporates and realleges all preceding paragraphs in this Count II.

42. In the event of default by Borrower under the Agreements, Borrower is obligated to return the Collateral at its expense and to any location that Plaintiff directs.

43. In the event of default by Borrower under the Agreements, Plaintiff is entitled to take possession of the Collateral or direct Borrower to remove it to a place deemed convenient by Plaintiff.

44. In the event of default by Borrower under the Agreements, Plaintiff is entitled to repossess and remove the Collateral, wherever located.

45. Plaintiff has performed its obligations under the Agreements, and is ready, willing, and able to perform under the Agreements.

46. Despite demand by Plaintiff, Borrower has failed to return the Remaining Collateral.

WHEREFORE, Plaintiff prays that:

    a. Judgment be entered in Plaintiff's favor and against Borrower directing Borrower to specifically perform its obligations under the Agreements, and to return and allow the removal of the Remaining Collateral;

    b. Plaintiff be awarded a judgment against Borrower for any damages sustained by Plaintiff;

    c. Plaintiff be awarded its costs, attorneys' fees, and interest on all unpaid amounts due and owing; and

    d. Plaintiff be granted such other and further relief as shall be just and equitable.

### COUNT III – Sequestration

47. Plaintiff incorporates and realleges all preceding paragraphs in this Count III.

AUS-6468367-2

48. This claim is brought pursuant to Rule 64 of the Federal Rules of Civil Procedure, Section 62 of the Texas Civil Practice and Remedies Code, and Sections 9.601 and 9.609 of the Business Code.

49. Pursuant to the Agreements, Plaintiff is lawfully entitled to possession of the Remaining Collateral.

50. The Remaining Collateral consists of 4 independent pieces of property, consisting of those items of Collateral not already recovered by Plaintiff.

51. The Remaining Collateral is wrongfully detained by Borrower.

52. The Remaining Collateral has not been taken for any tax, assessment, or fine levied by virtue of any Texas law against the property of Plaintiff or against Plaintiff individually, nor seized under any lawful process against the goods and chattels of Plaintiff subject to lawful process, nor held by virtue of any order for replevin against Plaintiff.

53. Based upon the best knowledge, information, and belief of Plaintiff, the Collateral is based out of a Borrower's location in Houston, Texas, but is unlikely to be at that location at any given time.

54. Given Borrower's possession of the Remaining Collateral, it is within the power of Borrowers to conceal, waste, encumber, convert, convey, or remove the Remaining Collateral from the jurisdiction of the Court, or Plaintiff's post-judgment remedy would be otherwise inadequate.

55. Solely for the purpose of setting an appropriate bond and not as an admission of value, Plaintiff estimates the fair market value of the Remaining Collateral as approximately $68,000.

AUS-6468367-2

56. Plaintiff claims the value of the Remaining Collateral not delivered to the officer by virtue of the enforcement of a writ of sequestration.

WHEREFORE, Plaintiff requests that:

    a. An order granting the issuance of writs of sequestration be entered in favor of Plaintiff granting Plaintiff possession of the Remaining Collateral;

    b. Plaintiff be awarded a judgment against Borrower for the value of the Remaining Collateral if not delivered;

    c. Plaintiff be awarded a judgment against Borrower for damages for detention;

    d. Plaintiff be awarded its costs, attorneys' fees, and interest on all unpaid amounts due and owing; and

    e. Plaintiff be granted such other and further relief as shall be just and equitable.

### COUNT IV - Breach of Contract

57. Plaintiff incorporates and realleges all preceding paragraphs in this Count IV.

58. Plaintiff has performed all terms and conditions of the Agreements to be performed by Plaintiff.

59. Borrower has not performed under the Agreements on Borrowers' part by, among other reasons, failing to make payments under the Agreements when those payments became due.

60. Under the Agreements, Plaintiff is entitled to contractual money damages from Borrower as provided therein.

61. The Agreements provide that Plaintiff shall recover its attorneys' fees, costs of collection, and interest on all unpaid amounts due and owing.

WHEREFORE, Plaintiff prays that this Court enter a judgment in its favor and against Borrower in the amount due under the Agreements, the exact amount to be proven at or before trial, plus its attorneys' fees, costs, and interest, together with such other and further relief as shall be just and equitable.

Dated:  February 14, 2018

Respectfully submitted,

HUSCH BLACKWELL, LLP

By: */s/ Sabrina A. Neff*
Sabrina A. Neff
TBN# 24065813
1800 Bering Dr., Suite 750
Houston, Texas 77057
(713) 647-6800 – Telephone
(713) 647-6884 – Facsimile
sabrina.neff@huschblackwell.com

ATTORNEYS FOR PLAINTIFF
BMO HARRIS BANK N.A.

## VERIFICATION

I, the undersigned, Kevin Evers, am employed by Plaintiff, BMO Harris Bank N.A., as a Litigation Specialist. As such, I have personal knowledge of the facts set forth in the attached Verified Complaint. I have reviewed the allegations of fact set forth in the Verified Complaint and hereby verify that said facts are true, correct, and accurate.

_____
Kevin Evers

Subscribed and sworn before me this
_14_ day of February, 2018.

_____
Notary Public

MICKI S KOEPKE
Commission Number 785995
My Commission Expires
9-21-2020
NOTARIAL SEAL — IOWA